UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-517-CIV-HIGHSMITH

FEDERAL DEPOSIT INSURANCE
CORPORATION, as manager of
the FSLIC Resolution Fund,

      Plaintiff,

v.

GHAITH R. PHARAON,

      Defendant.

_____/



FILED by _____ D.C.

MAR 2 3 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Ghaith
Pharaon's motion to dismiss the first amended complaint filed by
Plaintiff Federal Deposit Insurance Corporation, as manager of the
FSLIC Resolution Fund ("FDIC"). Having heard the argument of
counsel on February 4, 2000, and having reviewed the record, the
Court denies the defendant's motion.

## PROCEDURAL BACKGROUND

In 1995, the FDIC brought this action against Ghaith Pharaon
to recover funds allegedly lost by Centrust Savings Bank
("Centrust") as a result of the bank's sale and subsequent
repurchase of bonds to and from the Bank of Credit and Commerce
International ("BCCI"). According to the FDIC, the transaction

arose from an improper agreement between Pharaon and the Chairman of Centrust, David Paul, to misapply Centrust funds. In August, 1998, the Eleventh Circuit Court of Appeals vacated the Court's entry of final judgment against Defendant Ghaith Pharaon through application of the fugitive disentitlement doctrine and remanded the case. The FDIC has since filed a first amended complaint, asserting the following claims against Pharaon:

Count I:     Aiding and abetting David Paul's breach of fiduciary duty;

Count II:    Aiding and abetting David Paul's common law fraud;

Count III:   Conspiracy to conceal facts from Centrust and to misapply and convert Centrust's funds;

Count IV:    Conversion, by causing the unauthorized payment of Centrust funds to BCCI; and

Count V:     Aiding and abetting BCCI's conversion.

The FDIC seeks $25 million or, in the alternative, the difference between the amount Centrust paid to repurchase the bonds from BCCI and the amount it would have paid as part of its general repurchase program.

Pharaon has moved to dismiss the first amended complaint on several grounds. First, Pharaon argues that, by application of the imputation doctrine, David Paul's alleged wrongful acts must be imputed to the FDIC as successor in interest to Centrust Bank, thereby barring the FDIC's claims. In addition, Pharaon contends

2

that the action was commenced after expiration of the applicable limitations period.  Finally, Pharaon argues that Florida law does not recognize the aiding and abetting torts alleged by the FDIC. The Court addresses these arguments in reverse order.

## DISCUSSION

1. *Aiding and abetting*:

In his reply brief in support of his motion to dismiss, Pharaon stated:

> Because the imputation doctrine and statute of limitations grounds so clearly compel the dismissal of the FDIC's complaint, Pharaon will not continue to press his third ground, that some of the FDIC's aiding and abetting claims are flawed.  Pharaon does not, however, concede that all of the FDIC's aiding and abetting claims are cognizable and reserves his right to argue as such should this action survive.

See Reply memorandum of law in further support of defendant's motion to dismiss, at 11 n.5.  At oral argument, upon inquiry by the Court concerning this statement, counsel for Pharaon responded:

> Your Honor, we have stated in our papers, and let me with respect to aiding and abetting state that we are not pursuing the aiding and abetting argument.  Quite frankly, I think the case law -- there is one case that presents problems for us, and that's why we have not pursued that theory in our reply papers.
> So, I am not saying we are giving it up, but we are certainly not pursuing it here today in oral argument.

<u>See</u> Transcript of hearing on motion to dismiss, at 5.

In light of Pharaon's posture, the Court denies this portion of his motion without further analysis. The denial is without prejudice to Pharaon's reasserting this argument, if he so chooses, presumably in the form of a motion for judgment on the pleadings or for summary judgment.

2. *Statute of limitations:*

Next, the Court considers Pharaon's statute of limitations defense. In what can best be described as a very convoluted computational exercise, Pharaon attempts to show that the limitations period expired on May 18, 1994, before this action was filed.[1] The parties agree that the statute of limitations applicable to the FDIC's claims against Pharaon provides that the period shall be the longer of:

> (i) the period beginning on the date the claim accrues (as determined pursuant to 11(d)(14)(B) of the Federal Deposit Insurance Act) and ending on December 31, 1995 . . . or (ii) the period applicable under state law for such claim[s].

12 U.S.C. § 1441a(b)(14)(C). The parties further agree that the date on which the FDIC's claims accrued, as determined pursuant to the Federal Deposit Insurance Act, is the date when the Resolution

---

[1]The case was originally filed in state court on January 27, 1995 and removed to federal court on March 15, 1995.

4

Trust Corporation's receivership of Centrust began; i.e., March 9, 1990.  Hence, by the terms of subsection (i) of the statute, the limitations period extended from March 9, 1990 to December 31, 1995.[2]

According to Pharaon, however, this is not the end of the inquiry.  He argues that the period from March 9, 1990 to December 31, 1995, which comes to five years, nine months and twenty-two days, must be applied to the time when the events underlying the complaint took place to arrive at the correct ending date of the limitations period.  Because the buyback of bonds from BCCI was completed on July 27, 1988, Pharaon contends that the limitations period expired on May 18, 1994.  Pharaon predicates the necessity for this second computation on the argument that, if December 31, 1995 were the correct ending date for the limitations period, there would be no need to specify a beginning date.

The Court has reviewed the statutory language, as well as the legislative history supplied by the FDIC, and finds no support for Pharaon's two-step approach.  The designation of a fixed termination date is obviously the result of Congress' decision, when it amended the statute in February, 1994, to extend the end-date of the limitations period so that it would coincide with the

---

[2]The parties also agree that subsection (ii) of the statute does not apply.

5

date when the Resolution Trust Corporation was to cease its existence, to wit, December 31, 1995. Moreover, Pharaon's attempt to reset the start of the period in the face of clear statutory language is imaginative but woefully devoid of any legal basis. Therefore, the Court finds no merit in Pharaon's statute of limitations defense.

   3. *Imputation doctrine:*

   Finally, the Court addresses Pharaon's argument that the acts of David Paul, as a principal of Centrust, are imputed to the FDIC because the latter stands in the shoes of Centrust. The FDIC's response to this contention is two-fold. First, the FDIC posits that the general rule of imputation does not apply to the FDIC due to its status as receiver of Centrust.[3] Alternatively, the FDIC argues that the imputation doctrine does not bar the claims of an injured corporation against a third party intentional tortfeasor (Pharaon) who acted in concert with the corporation's officer (Paul) to injure the corporation. The parties agree that Florida law applies to this issue.

_____

   [3]The FDIC brought this action as manager of the FSLIC Resolution Fund, which assumed the role of receiver from the Resolution Trust Corporation upon the latter's termination on December 31, 1995. In that capacity, the FDIC acts as receiver in circumstances, such as those involving Centrust, where the Resolution Trust Corporation had been acting as receiver prior to its termination. There is no dispute between the parties regarding the characterization of the FDIC as Centrust's receiver.

6

In <u>Seidman & Seidman v. Gee</u>, 625 So. 2d 1 (Fla. 3rd DCA 1992), the Third District Court of Appeals barred a corporation from bringing a cause of action against an accounting firm, whose alleged negligence had artificially prolonged the corporation's life past the point of solvency.  The accountants had failed to discover the non-existence of a $10 million certificate of deposit that had been reported by the corporate manager as an asset of the corporation.  According to the Third District:

> Where it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud.

<u>Id.</u> at 3.  Pharaon argues that the FDIC is similarly barred from asserting claims against him, because David Paul's mis-conduct, in which Pharaon is alleged to have participated, is imputed to Centrust and extends to Centrust's receiver.

As previously noted, the FDIC first argues that its status as receiver is sufficient to preclude application of the imputation doctrine.  The FDIC relies on <u>Welt v. Sirmans</u>, 3 F. Supp. 2d 1396 (S.D. Fla. 1997) (Nesbitt, J.).  In <u>Welt</u>, Judge Lenore C. Nesbitt noted that she had been unable to locate a Florida case on the precise issue before her, namely, whether the fraud of the director

of a corporation should be imputed to the bankruptcy trustee of that corporation. After analyzing cases addressing closely related issues, Judge Nesbitt concluded that, under the <u>Welt</u> scenario, a Florida state court would permit the bankruptcy trustee to bring a claim for damages stemming from a third party's negligent failure to discover a fraud perpetrated by the corporation's officers and directors. <u>Id.</u> at 1403. Finding Judge Nesbitt's rationale persuasive, and even more apropos in this case where the third-party's alleged conduct is more culpable than negligence, the undersigned concludes that the FDIC, in its capacity as receiver for Centrust, is not barred by the imputation doctrine from bringing this action against Pharaon.

The defendant contends, however, that <u>Welt</u> was overruled by the Eleventh Circuit in <u>Beck v. Deloitte & Touche</u>, 144 F.3d 732 (11th Cir. 1998). A review of this opinion reveals that, even though the claim was being brought by a bankruptcy trustee, the <u>Beck</u> court did not consider the issue addressed by Judge Nesbitt in <u>Welt</u>. Rather, the <u>Beck</u> court addressed a recognized exception to the imputation doctrine, namely, where a corporate officer is acting adversely to the corporation, his knowledge and conduct are not imputed to the corporation. <u>Beck</u>, 144 F.3d at 736. From the Eleventh Circuit's silence regarding any distinction between a corporation and its trustee, Pharaon infers a ruling that there is

8

no distinction.  The Court finds no justification for such a leap of logic.  In any event, the Beck holding supports the FDIC's alternative argument, that the imputation doctrine does not bar the claims of Centrust against Pharaon for intentional torts allegedly perpetrated by him in concert with Centrust's Chairman, David Paul, to injure the corporation.

In Beck, the Eleventh Circuit ruled that, in the context of a motion to dismiss, the key question is:  "Did the Trustee allege facts that might conceivably establish that the directors' interest was adverse [to that of the corporation]?"  Beck, 144 F.3d at 736. Pharaon argues that the FDIC cannot satisfy this test because the BCCI bond transaction was for the benefit of Centrust.  In its first amended complaint, however, the FDIC alleges that the buyback scheme underlying this action was effectuated by Paul and Pharaon for the purpose of defrauding Centrust and converting Centrust funds for the benefit of BCCI.  Moreover, the FDIC asserts that Paul has pleaded guilty to the charge of misapplying the buyback funds "with intent to injure and defraud Centrust."  Thus, as alleged in the complaint, Paul has acknowledged through his guilty plea that, in relation to the BCCI scheme, his interest was adverse to Centrust's.  This is all that is required under Beck to survive a motion to dismiss.

<u>CONCLUSION</u>

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Defendant Ghaith Pharaon's motion to dismiss the first amended complaint is DENIED.  The defendant has fifteen days from the date of this order to answer the complaint.

DONE AND ORDERED in Chambers, at Miami, Dade County, Florida, this _23rd_ day of March, 2000.

                                              SHELBY HIGHSMITH
                                        UNITED STATES DISTRICT JUDGE

cc:  Barry Rosen, Esq.
     Bernard Brodsky, Esq.
     Paulino Nunez, Esq.
     Richard Lawler, Esq.
     Francisco Angones, Esq.

10